XIUYUAN HU
California State Bar No. 331041
**HU LLP**
980 Roosevelt, Ste. 110
Irvine, CA 92620
Telephone: (626) 283-3653
E-mail: tonyhu@hullp.com

Attorney for Petitioner
KECE ZENG

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KECE ZENG, A# 234-611-952,<br><br>Petitioner,<br><br>vs.<br><br>MARK BOWEN, WARDEN, ADELANTO ICE PROCESSING CENTER; LOS ANGELES FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID VENTURELLA, ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY; TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES,<br><br>Respondents. | **Case No.:**<br><br>PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner KECE ZENG ("Petitioner" or "Mr. Zeng"), by and through undersigned counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment.

This Petition does not ask the Court to reweigh ordinary bond factors. It challenges the legal and constitutional adequacy of a procedure that placed the burden of proving unnecessary detention on Petitioner and then converted evidentiary absence into adverse conjecture about an asylum application the Immigration Judge admittedly had not reviewed. The missing application was not hypothetical: USCIS had accepted it approximately two years earlier, and the filed I-589 expressly invoked political opinion and religion and was supported by a detailed statement describing past mistreatment, political activities, threats, and a post-entry Christian conversion. Zeng Decl. ¶¶ 4–10, 21–24, Exs. B, C, G.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2241 because Petitioner is in federal custody and alleges that his continued custody violates the Constitution. 28 U.S.C. § 2241(c)(1), (3).

2. Section 1226(e) bars review of discretionary judgments concerning detention or release, but it does not foreclose review of constitutional claims or questions of law. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Martinez v. Clark*, 124 F.4th 775, 779, 781–83 (9th Cir. 2024); accord *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). Applying *Wilkinson v. Garland*, 601 U.S. 209 (2024), the Ninth Circuit has confirmed that whether an adjudicator correctly applied a governing standard to a given set of facts is a reviewable mixed question of law and fact, not an unreviewable discretionary judgment. *Martinez*, 124 F.4th at 779, 783; *see Wilkinson*, 601 U.S. at 221, 225; *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020). Petitioner does not cloak a disagreement about weight in constitutional garb. Like the plaintiffs in *Hernandez v. Sessions*, he claims that "the discretionary process itself was constitutionally flawed." 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Singh*, 638 F.3d at 1202). The claim is colorable on the face of the decision itself: the Immigration Judge wrote that the I-589 was not in the bond evidence and then made four substantive findings about that application's contents and strength. Zeng Decl. ¶¶ 21–24, Ex. G. Whether an adjudicator may resolve an

acknowledged evidentiary gap against liberty in that manner is a question of law, not a request to reweigh the evidence.

3. Venue is proper because Petitioner is confined at the Adelanto ICE Processing Center in San Bernardino County, within the Central District of California, Eastern Division, and his immediate custodian is located within this District.

## II. PARTIES

4. Petitioner Kece Zeng is a citizen of China presently detained by ICE at the Adelanto ICE Processing Center. Zeng Decl. ¶ 1.

5. Respondent Mark Bowen, Warden of the Adelanto ICE Processing Center, is Petitioner's immediate physical custodian and is therefore the proper respondent to this Petition.*See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). He is sued in his official capacity.

6. The Field Office Director of ICE Enforcement and Removal Operations, Los Angeles Field Office, exercises authority over Petitioner's immigration detention and is sued in his or her official capacity.

7. Respondent Secretary of Homeland Security oversees DHS and its immigration detention operations, and Respondent Todd Blanche is the Attorney General of the United States. Each is sued in his official capacity. Any successor to a named official is automatically substituted. Fed. R. Civ. P. 25(d).

## III. EVIDENTIARY BASIS

8. Petitioner concurrently submits his declaration based on personal knowledge. The declaration authenticates: Exhibit A, his Form I-94; Exhibit B, the USCIS I-589 receipt; Exhibit C, his filed I-589, Chinese statement, and certified English translation; Exhibit D, his Employment Authorization Document; Exhibit E, selected restaurant records; Exhibit F, the Form I-213 from his immigration record; Exhibit G, the August 26, 2026 bond decision; Exhibit H, selected church and community records; and Exhibit I, the sponsor declaration. Zeng Decl. ¶¶ 3–5, 11–12, 19, 21, 25–26.

9. No separate airline itinerary is submitted. The booking information is stored on the telephone ICE took from Petitioner, which he cannot access in detention. Zeng Decl. ¶ 17. The Government's own

Form I-213 independently records that ICE acted on Petitioner's LAX-to-Honolulu itinerary and encountered him at the gate for United Airlines Flight UA1169. Zeng Decl. ¶¶ 16–19, Ex. F.

## IV. FACTUAL BACKGROUND

10. Petitioner lawfully entered at Los Angeles International Airport on March 13, 2024 in B-2 status and was authorized to remain through September 11, 2024. Zeng Decl. ¶¶ 2–3, Ex. A.

11. Before that authorized stay expired, USCIS received Petitioner's affirmative Form I-589 on July 4, 2024. The application remained pending, and USCIS later granted employment authorization. Zeng Decl. ¶¶ 4, 11, Exs. B, D.

12. The filed I-589 expressly checks both "Political Opinion" and "Religion." Zeng Decl. ¶¶ 5–7, Ex. C. The accompanying statement describes consequences imposed on Petitioner's parents under China's family-planning policy, Petitioner's detention and mistreatment by police in 2002, police pressure after he posted a video of police violence in December 2022, and his political activities and threats after arrival in the United States. Id.

13. Petitioner's Christian conversion occurred after entry. He began attending Ling Dong Chinese Hope Baptist Church on or about June 30, 2024 and was baptized on September 15, 2024. Zeng Decl. ¶ 8, Ex. H. Thus, when asked whether he had planned to apply for asylum at the moment he entered in March 2024, Petitioner truthfully answered no: he had not entered with a fixed asylum plan and had not yet converted. Zeng Decl. ¶¶ 8–10.

14. After receiving employment authorization, Petitioner first operated on a limited basis as a small private-kitchen operation. The slightly more than $70,000 in 2025 gross sales reflects that limited start-up operation, not a full year of a formal restaurant. Petitioner opened the formal restaurant location in approximately February 2026 and was actively operating it when detained. Zeng Decl. ¶¶ 12–14, Ex. E.

15. Petitioner also paid taxes and participated in his church community. Prior to his ICE detention, he had never been arrested, charged or convicted in the United States and has consistently used his true identity. Zeng Decl. ¶¶ 15, 25, Exs. E, H.

16. On July 23, 2026, Petitioner went to LAX to take United Airlines Flight UA1169 to Honolulu. The travel was domestic. Petitioner traveled under his true identity, produced his genuine passport, cooperated with ICE, and was arrested without incident. Zeng Decl. ¶¶ 16–19, Ex. F.

17. Petitioner cannot retrieve the electronic itinerary because ICE took the telephone on which it is stored. Zeng Decl. ¶ 17. The Form I-213 nevertheless confirms the LAX-to-Honolulu itinerary, flight number, encounter at the gate, and arrest without incident. Zeng Decl. ¶ 19, Ex. F.

18. At Petitioner's custody-redetermination hearing, the Government was not required to prove that detention was necessary. On August 26, 2026, the Immigration Judge denied bond solely because Petitioner had not carried his burden to demonstrate that he was not a flight risk. Zeng Decl. ¶¶ 20–22, Ex. G.

19. The written decision states: "The Court has no I-589 application in the bond evidence but presuming he files an application in the removal portion, the Court infers the claim will be primarily based upon a well-founded fear, seemingly based upon the practice of religion." The premise of that sentence is mistaken. Petitioner did not merely intend to file; USCIS received his Form I-589 on July 4, 2024, and granted employment authorization on January 22, 2025. Zeng Decl. ¶¶ 4, 11, Exs. B, D. Proceeding from that premise, the decision inferred from Petitioner's answer about his intent at entry that he had suffered "no or minimal past persecution," characterized the resulting claim as weaker, and treated that characterization as a "significant flight risk factor." Zeng Decl. ¶¶ 21–24, Ex. G. A reviewing court does not credit an adjudicator's assurance that it considered the record where the decision misstates the record or fails to account for highly probative or potentially dispositive evidence.*Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011), *quoted in Martinez*, 124 F.4th at 785.

20. The filed application contradicts the premise that the claim is merely a future religious claim. It expressly relies on political opinion as well as religion and contains factual allegations of past mistreatment, political activities, and threats. The timing of Petitioner's conversion explains his answer concerning intent at entry. Zeng Decl. ¶¶ 5–10, 23–24, Ex. C.

21. The decision also discounted the restaurant based in part on its 2025 gross sales. That figure reflected a limited private-kitchen operation before Petitioner opened the formal restaurant location in

approximately February 2026. It did not represent a full year of formal restaurant operations. Zeng Decl. ¶¶ 12–14, Exs. E, G.

22. Petitioner's proposed sponsor, Xinmei Zeng, is the mother of Petitioner's employee, Qiandan Huang. This existing relationship explains why Xinmei Zeng offered Petitioner housing and assistance. Zeng Decl. ¶¶ 26–27, Ex. I.

23. Petitioner's condition has deteriorated acutely in detention. Beginning approximately the second day of custody, he has suffered daily nosebleeds that have worsened. He reports severe depression and three suicide attempts by cutting his wrists. His mother suffered depression and died by suicide. Petitioner requires immediate medical and mental-health evaluation and treatment and fears further deterioration if detained. Zeng Decl. ¶¶ 28–30.

24. Petitioner intends to pursue his asylum case, attend every hearing, and comply with reasonable conditions including reporting, electronic check-ins, travel restrictions, or GPS monitoring. Zeng Decl. ¶¶ 31–33.

## V. PETITIONER IS DETAINED UNDER 8 U.S.C. § 1226(a)

25. Section 1226(a) governs detention during removal proceedings and permits release on bond or conditional parole. 8 U.S.C. § 1226(a)(1) – (2) (INA § 236(a)); Rodriguez Diaz, 53 F.4th at 1196. Petitioner is charged as a nonimmigrant overstay, has no criminal history triggering mandatory detention, and received a § 1226(a) custody-redetermination hearing. Zeng Decl. ¶¶ 15, 19–22, Exs. F, G.

## VI. EXHAUSTION SHOULD BE EXCUSED

26. Section 2241 contains no statutory exhaustion requirement for this claim, and exhaustion in habeas is prudential rather than jurisdictional. *Singh*, 638 F.3d at 1203 n.3. Prudential exhaustion may be required where agency expertise is necessary to generate a proper record, where relaxation would encourage deliberate bypass of the administrative scheme, and where administrative review is likely to let the agency correct its own mistakes and preclude judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). But even where those factors favor exhaustion, a court may waive the requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be

void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *accord Hernandez*, 872 F.3d at 988 (affirming waiver of prudential exhaustion in a § 1226(a) bond case).

27. Petitioner has not filed a BIA bond appeal. He acknowledges *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), under which a district court faced with an unexhausted claim "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." Waiver is warranted here for three reasons. First, the relief sought is beyond the agency's power to grant. The governing regulations provide that "the alien must demonstrate to the satisfaction of the officer" that release would not pose a danger and that he is likely to appear. 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). The Board carried that same allocation into bond hearings before immigration judges, placing on the detainee the burden to establish that he does not pose a risk of flight. *Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006); *see Hernandez*, 872 F.3d at 982. Petitioner's claim is that this allocation, combined with the use of an acknowledged evidentiary gap to generate adverse merits conjecture, was constitutionally inadequate as applied to him. The Board is bound by its own precedent and cannot declare that framework repugnant to the Fifth Amendment. Where the agency's position on the question at issue is already set, resort to it is futile. *El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 747 (9th Cir. 1991), as amended (Mar. 10, 1992). Second, a renewed custody request under 8 C.F.R. § 1003.19(e) would not cure the defect. Any further hearing would proceed under the same allocation of the burden, so the very procedure Petitioner challenges would simply repeat itself, and the delay would prolong the confinement at issue. Petitioner's daily nosebleeds, severe depression, and reported suicide attempts make that delay an irreparable injury. Zeng Decl. ¶¶ 28–30; *see Laing*, 370 F.3d at 1000. Third, should the Court nevertheless conclude that exhaustion is required, Petitioner respectfully requests that the Court stay this action pending administrative proceedings rather than dismiss it. *Leonardo*, 646 F.3d at 1160.

## VII. CLAIM FOR RELIEF

## FIFTH AMENDMENT DUE PROCESS

28. The Fifth Amendment forbids deprivation of liberty without due process of law. Freedom from physical confinement lies at the core of the protected liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

29. Under *Mathews v. Eldridge*, the Court considers the private interest, the risk of erroneous deprivation and probable value of additional safeguards, and the Government's interest and administrative burden. 424 U.S. 319, 335 (1976).

30. Petitioner's private interest is exceptionally weighty. He is civilly incarcerated despite no criminal history and no finding of danger. Before detention he lived openly, filed for asylum during his authorized stay, received work authorization, operated a restaurant, paid taxes, and participated in church. Zeng Decl. ¶¶ 2–15, 25.

31. Continued detention is also causing grave and escalating harm. Petitioner reports worsening daily nosebleeds, severe depression, and three suicide attempts by cutting his wrists. His family history includes his mother's depression and death by suicide. These facts make prompt relief especially urgent. Zeng Decl. ¶¶ 28–30.

32. The procedure created a substantial risk of error. Petitioner bore the burden of proving a negative—that detention was unnecessary—and the absence of the I-589 was then used to permit multiple adverse assumptions: minimal past persecution, a primarily religious theory, a weaker claim, and speculative relief. The decision made that reliance explicit, describing the claimed relief as "already speculative given the absence of any I-589 in the bond evidence, even more speculative." The evidentiary gap the Immigration Judge acknowledged was thus not set aside as unknowable; it was converted into a reason to doubt the claim and then into a significant flight-risk factor. Zeng Decl. ¶¶ 21–24, Ex. G.

33. This is not simply disagreement with evidentiary weight. It is a challenge to the legal adequacy of resolving material uncertainty against liberty where the adjudicator acknowledged that the central record was missing and nevertheless assessed the merits of that unseen record. Exhibit C demonstrates the concrete risk: the filed application expressly invokes political opinion and details matters the decision did not consider. Zeng Decl. ¶¶ 5–10, 23–24. *Cf. Cole*, 659 F.3d at 771–72; *Martinez*, 124 F.4th at 785.

34. The safeguard that would most directly reduce that risk is a new custody hearing at which the filed I-589 is actually before the adjudicator and no adverse inference is drawn from its absence. That is a targeted correction to the specific procedure Petitioner challenges, not a wholesale revision of the burden of proof. *Cf. Rodriguez Diaz*, 53 F.4th at 1214 (noting that deficiencies in individual § 1226(a) proceedings "may be redressable through means short of major changes to the burden of proof"). In the alternative, requiring the Government to establish the necessity of continued detention by clear and convincing evidence would serve the same end. Civil detention for any purpose is a significant deprivation of liberty, and a standard higher than the preponderance of the evidence is the ordinary measure of the certainty due process demands before it is imposed. *See Addington v. Texas*, 441 U.S. 418, 427, 432–33 (1979). Petitioner is willing to comply with reporting, monitoring, travel restrictions, and other supervision. Zeng Decl. ¶¶ 31–33.

35. The Government's legitimate interests in assuring appearance and protecting the community can be addressed without incarceration where reasonable conditions suffice. Requiring the Government to justify continued confinement and address alternatives imposes modest administrative cost compared with Petitioner's physical liberty.

## VIII. RODRIGUEZ DIAZ AND MARTINEZ DO NOT FORECLOSE THIS AS-APPLIED CLAIM

36. *Rodriguez Diaz* held that § 1226(a)'s procedures satisfy due process both facially and as applied to the petitioner there. 53 F.4th at 1213. But the court expressly stated that "[i]n so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures," and noted the Government's agreement that detained noncitizens may bring such challenges. *Id.* The petitioner there failed because he "has not pointed to any individualized circumstances warranting additional procedures, or any unconstitutional failure of the § 1226(a) procedures in his case." *Id.* Petitioner points to precisely such a circumstance. The court also recognized that federal courts retain jurisdiction over legal error, including a claimed due process violation, in § 1226(a) proceedings. *Id.* at 1209.

37. *Martinez v. Clark* marks the same line. On remand from the Supreme Court, the Ninth Circuit held that federal courts retain jurisdiction over constitutional claims and questions of law arising from a

bond decision, including whether the agency applied the correct burden of proof, while reviewing the agency's application of a standard to the facts only for abuse of discretion. 124 F.4th at 779–80, 785. Petitioner's claim falls on the reviewable side of that line: he does not ask this Court to reweigh the evidence, but to decide whether it was constitutionally permissible to resolve an acknowledged evidentiary gap against him and then treat the resulting conjecture as a significant flight-risk factor.

38. Petitioner does not ask this Court to decide whether his restaurant, sponsor, or other evidence should have received greater weight. His narrower claim is that the process permitted an admittedly absent I-589 to become a basis for conjectural merits findings and then a significant flight-risk factor, while Petitioner bore the burden of dispelling the uncertainty. Petitioner does not contend that an immigration judge may never weigh the strength of a claim for relief; the agency's nine enumerated custody factors are permissive, and an adjudicator may consider matters beyond them. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Martinez*, 124 F.4th at 784. The defect is that this particular factor was assessed from a document the Immigration Judge stated was not in the bond evidence, so the finding rests on no record support at all. The newly submitted I-589 and statements show why that procedure carried a concrete risk of error.

39. Petitioner acknowledges that *Rodriguez Diaz* presents a substantial obstacle to a free-standing claim that the Government must bear the burden at every initial § 1226(a) hearing. Relief is nevertheless warranted on the unusual record here because the claimed constitutional defect is tied to the actual procedure and express reasoning used in Petitioner's case, not detention length or a categorical entitlement to a second hearing.

## IX. RELIEF

40. Habeas corpus authorizes relief from executive detention that violates the Constitution. Petitioner requests release on reasonable conditions or, alternatively, a prompt new custody hearing before a neutral adjudicator at which the filed Form I-589 is part of the record and no adverse inference is drawn from its earlier absence. In the alternative, Petitioner requests that the Government be required at that hearing to prove by clear and convincing evidence that continued detention is necessary and that reasonable conditions cannot adequately address any proven risk. Petitioner's worsening physical

symptoms, severe depression, and reported suicide attempts make expedited relief essential. Zeng Decl. ¶¶ 28–30.

41. Any new adjudicator should consider Petitioner's ability to pay before imposing a monetary bond and should consider less restrictive alternatives. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017). Petitioner recognizes that *Hernandez* has been distinguished where the detainee was found to pose a danger or a flight risk. *See Martinez*, 124 F.4th at 786. That distinction does not apply here, because the flight-risk finding is itself the product of the procedure Petitioner challenges; if that finding is set aside, no such determination stands.

## X. PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that the Court:

A. Assume jurisdiction over this action;

B. Issue a writ of habeas corpus and order Petitioner's immediate release upon reasonable conditions;

C. Alternatively, order Respondents to provide a new individualized custody hearing within seven days before a neutral adjudicator, at which the filed Form I-589 is part of the record and no adverse inference is drawn from its earlier absence;

D. In the alternative, require the Government at that hearing to prove by clear and convincing evidence that Petitioner presents a flight risk or danger requiring continued detention;

E. Require consideration of reasonable conditions short of detention and Petitioner's ability to pay any monetary bond;

F. Order release if Respondents fail timely to provide the ordered hearing;

G. Declare Petitioner's continued detention without constitutionally adequate procedures unlawful;

H. Grant such other relief as the Court deems just and proper.

Dated: September 1, 2026

Respectfully Submitted,

**HU LLP**

By: ______________________________

XIUYUAN HU
Attorney for Petitioner
KECE ZENG

**VERIFICATION**

I, Kece Zeng, A-Number 234-611-952, declare as follows:

I am the Petitioner in the above-entitled action. I have read the foregoing Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and know the contents thereof.

The facts stated in the Petition are true and correct of my own personal knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 1, 2026, at Adelanto, California.

/s/ Kece Zeng

Kece Zeng

A#: 234-611-952